LOCAL NO. 153, OFFICE AND PROFESSIONAL EMPLOYEES IN-
TERNATIONAL UNION, AFL–CIO, PLAINTIFF-RESPONDENT,
v. THE TRUST COMPANY OF NEW JERSEY, DEFENDANT-AP-
PELLANT.

Argued November 3, 1986—Decided April 1, 1987.

*James B. Clark* argued the cause for appellant (*Yauch, Peterpaul & Clark,* attorneys).

*Bruce D. Leder* argued the cause for respondent (*Schneider, Cohen & Solomon,* attorneys; *David Grossman,* on the brief).

The opinion of the Court was delivered by

STEIN, J.

This case involves the validity of an arbitration award imposed as the result of a dispute between a bank and one of its tellers. The teller was fired for cashing a forged check. The arbitrator reinstated the employee, and ordered her to reimburse the bank for its loss. The Chancery Division upheld the arbitrator's decision to reinstate the employee, but vacated the reimbursement portion of the award. The Appellate Division affirmed in an unreported opinion. We are of the view that the award was within the scope of the arbitrator's authority. Accordingly, we reverse and reinstate that portion of the award that requires the employee to reimburse the bank for its $3500 loss.

## I

Minnie Pfeuffer was the Head Teller at the Union City branch of the Trust Company of New Jersey. At the time she was fired, she had held that position for sixteen years. She had been an employee of the bank for 38 years, and during that entire period she had never been disciplined.

On September 29, 1984, a busy Saturday morning, a woman entered the bank and approached Pfeuffer's window. The woman identified herself as Mary Cook. She told Pfeuffer that she had just won the lottery and was interested in opening an account with the bank. She also wanted to cash a check for $3500 that named her as payee. Under bank policy, Pfeuffer was required to obtain approval from a bank officer before she could cash a check in this amount drawn on another bank for a non-depositor. Accordingly, Pfeuffer referred the woman to Harold Wrightington, the Branch Manager.

According to Pfeuffer's testimony at the arbitration hearing, she sent Cook to Wrightington's office three times to obtain his approval. Eventually, Wrightington escorted Cook to the teller area and called out "Minnie." Pfeuffer testified that she and Wrightington had developed a shorthand method of approving checks during busy periods. Although the usual procedure was for Wrightington to write "O.K." and his initials on the back of the check, when the bank was crowded, Wrightington would shout out Pfeuffer's first name to signal that he had approved the check. Later on, when the flow of customers had subsided, he would initial the checks that he had approved orally.

When Cook handed the check to Pfeuffer for cashing, Pfeuffer glanced at the back of the check and observed the letters "O.K." She apparently did not turn the check completely over, or consider why there was any notation at all on a check that Wrightington had already approved orally. Pfeuffer cashed the check. She counted out thirty-five $100 bills, as Wrightington stood a few feet away conversing with Cook.

After Cook left the bank, Pfeuffer turned the check completely over and saw that Wrightington's name was written out in full. Pfeuffer asked Wrightington why his full name appeared on the back of the check rather than his initials. He responded that he had neither signed nor approved the check. Wrightington ran outside after Cook, but she was gone.

One week later, the check was returned as uncollectible. The bank suspended Pfeuffer indefinitely. On October 9, 1984, she was fired.

The bank has questioned some crucial aspects of Pfeuffer's story. There is no corroborating evidence of the existence of the shorthand-verbal method of approving checks. There is also no corroboration for Pfeuffer's claim that Wrightington watched her count out the money. Unfortunately, Wrightington died before he could give a statement outlining his version of the events of that day.

Pfeuffer's Union, Local No. 153 of the Office and Professional Employees International Union (hereinafter Union), challenged her termination. It claimed her discharge was not supported by just cause and therefore violated the collective bargaining agreement between the Bank and the Union. The parties submitted the issue for arbitration, certifying the following questions:

> Was there just and sufficient cause to terminate Minnie Pfeuffer under the terms of the labor agreement between Local 153, O.P.E.I.U., and the Trust Company of New Jersey? If not, what shall be the remedy?

After a hearing, the arbitrator decided that discharge was too harsh a penalty. He found Pfeuffer's testimony to be honest and straightforward, noting that she had not attempted to minimize her responsibility and had offered to pay back the money. He also cited her long service with the bank, and the fact that she had never been disciplined before this incident.

However, the arbitrator also acknowledged that Pfeuffer had committed a serious error by cashing the check without making sure that it had been approved. The check was for a large

sum, and, according to the bank, Pfeuffer's negligence resulted in one of the largest single losses by a teller in many years.

As a result of his findings, the arbitrator imposed the following remedy: Pfeuffer was to be reinstated as of April 22, 1985. At that point, she would have been out of work for twenty-eight weeks. The first fourteen weeks were to be treated as a disciplinary suspension without pay. He awarded Pfeuffer back pay for the next fourteen weeks. He also required Pfeuffer to pay back the bank's loss of $3500 from the back-pay award.

The Union filed suit in the Superior Court seeking to confirm the portion of the award ordering reinstatement and to vacate the reimbursement remedy. The Chancery Division granted the relief requested by the Union. The court found that the arbitrator's findings were supported by sufficient evidence and that the order of reinstatement was within his authority. However, the court held that the reimbursement remedy exceeded the arbitrator's authority under the collective bargaining agreement. In addition, the court held that reimbursement was an unreasonable remedy because the bank was partially responsible for the loss. The Appellate Division affirmed on the basis of the opinion below.

We granted certification, 104 *N.J.* 432 (1986), to examine whether the arbitrator's award exceeded his authority. We now hold that the award was proper, and reinstate that portion of the award requiring that Ms. Pfeuffer reimburse the bank for its $3500 loss.

## II

Arbitration is designed to resolve disputes arising out of labor contracts without resorting to judicial intervention. *See United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 *U.S.* 574, 580–81, 80 *S.Ct.* 1347, 1351–52, 4 *L.Ed.* 2d 1409, 1416 (1960); *County College of Morris Staff Ass'n v. County College of Morris*, 100 *N.J.* 383 (1985); *Local Union*

*560, I.B.T. v. Eazor Express, Inc.,* 95 *N.J.Super.* 219, 227 (App.Div.1967). It is quick and efficient, and minimizes disruption in the workplace. *Id.* As the Supreme Court stated in *Warrior & Gulf, supra,* 363 *U.S.* at 581, 80 *S.Ct.* at 1352, 4 *L.Ed.*2d at 1416:

> [T]he grievance machinery under a collective bargaining agreement is at the very heart of the system of industrial self-government. Arbitration is the means of solving the unforeseeable by molding a system of private law for all the problems which may arise and to provide for their solution in a way which will generally accord with the variant needs and desires of the parties.

Arbitration is also intended to provide for decision-making by someone with experience in the particular industry and with knowledge of the customs and practices of the particular work site. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 *U.S.* 593, 596, 80 *S.Ct.* 1358, 1360, 4 *L.Ed.*2d 1424, 1428 (1960). Parties often choose arbitrators based on their knowledge of the "common law of the shop." *Warrior & Gulf, supra,* 363 *U.S.* at 582, 80 *S.Ct.* at 1352, 4 *L.Ed.*2d at 1417. They expect the arbitrator to look beyond strictly legal criteria to other factors that bear on the proper resolution of a dispute. These factors may include "the effect upon productivity of a particular result, its consequence to the morale of the shop [and] whether tensions will be heightened or diminished." *Id.* As the Supreme Court acknowledged, "[t]he ablest judge cannot be expected to bring the same experience and competence to bear upon the determination of a grievance, because he cannot be similarly informed." *Id.*

Many of the benefits of arbitration would be lost if reviewing courts were permitted to conduct *de novo* examinations of the merits of an arbitration award. It has therefore been generally recognized that the role of the courts in reviewing arbitration awards is extremely limited. *See Warrior & Gulf, supra,* 363 *U.S.* at 582, 80 *S.Ct.* at 1352, 4 *L.Ed.*2d at 1417; *Eazor Express, supra,* 95 *N.J.Super.* at 227. Arbitration awards are favored by the courts and are generally presumed to be valid. *County College of Morris, supra,* 100 *N.J.* at 390;

*Barcon Assocs., Inc. v. Tri-County Asphalt Corp.*, 86 *N.J.* 179 (1981); *Heffner v. Jacobson*, 185 *N.J.Super.* 524, 526 (Ch.Div. 1982), aff'd, 192 *N.J.Super.* 299 (App.Div.1983), aff'd, 100 *N.J.* 550 (1985). As we stated in *Barcon Assocs., supra*, 86 *N.J.* at 187: "Arbitration can attain its goal of providing final, speedy and inexpensive settlement of disputes only if judicial interference with the process is minimized; it is, after all, 'meant to be a substitute for and not a springboard for litigation.'" (quoting *Korshalla v. Liberty Mutual Ins. Co.*, 154 *N.J.Super.* 235, 240 (Law Div.1977)).

Courts should intervene only where the arbitrator has exceeded his authority or acted improperly. *See Enterprise Wheel, supra*, 363 *U.S.* at 597, 80 *S.Ct.* at 1361, 4 *L.Ed.*2d at 187–88; *N.J.S.A.* 2A:24–8. Otherwise, the arbitrator has broad discretion and authority to draw on his own knowledge and experience in analyzing the facts and fashioning an appropriate remedy. As the Supreme Court stated in *Enterprise Wheel, supra*, 363 *U.S.* at 597, 80 *S.Ct.* at 1361, 4 *L.Ed.*2d at 1428:

> When an arbitrator is commissioned to interpret and apply the collective bargaining agreement, he is to bring his informed judgment to bear in order to reach a fair solution of a problem. This is especially true when it comes to formulating remedies. There the need is for flexibility in meeting a wide variety of situations. The draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency.

However, there are limits to the arbitrator's authority. These limits are defined by statute, *N.J.S.A.* 2A:24–8, and by the collective bargaining agreement between the parties. The arbitrator may also be limited by the questions framed by the parties in a particular dispute.

*N.J.S.A.* 2A:24–8 describes the situations in which a court must refuse to enforce an arbitration award. The statute provides that the award shall be vacated if procured by fraud, corruption, or undue means. *N.J.S.A.* 2A:24–8(a). The award will not be given effect if the arbitrator abandoned his impartiality or otherwise acted so as to prejudice the rights of a party. *N.J.S.A.* 2A:24–8(b) and (c). The statute also provides

that the award will not be enforced if it lacks finality or definiteness. *N.J.S.A.* 2A:24-8(d). None of these provisions requires a reversal of the award in this case.[1]

██ The major limitation on the arbitrator's authority is the collective bargaining agreement itself. The arbitrator has no authority beyond that delegated to him by the parties. *County College of Morris, supra,* 100 *N.J.* 383 (1985); *Communications Workers of America, Local 1087 v. Monmouth County Bd. of Social Servs.,* 96 *N.J.* 442 (1984). The remedy is a creation of the contract, and the award must be consistent with its terms:

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award. [*Enterprise Wheel, supra,* 363 *U.S.* at 597, 80 *S.Ct.* at 1361, 4 *L.Ed.*2d at 1428.]

██ In this case, the collective bargaining agreement sets forth a grievance and arbitration procedure to resolve "[a]ny difference or dispute between the Bank and the Union arising out of or relating to the terms of this Agreement or its interpretation or application or the enforcement thereof." This procedure was intended to be the "sole means of obtaining adjustment of the dispute."

The agreement requires a conference between the affected employee and Bank officers. If no solution results from this

---

[1] The only *statutory* ground for reversing the arbitrator's award that has been raised in this litigation is the allegation of the Bank that the award is based upon "mistakes of fact amounting to undue means." Although this claim was briefed extensively before the Appellate Division, the Bank does not seem to be pressing the issue on this appeal. Moreover, while "undue means" has been interpreted as including a "clearly mistaken view of fact or law," *Eazor Express, supra,* 95 *N.J.Super.* at 228, it does not include situations, such as this, where the arbitrator bases his decision on one party's version of the facts, finding that version to be credible. We therefore reject the argument that the award was procured by "undue means."

conference, the employee and Union may appeal to the Bank president. If there is still no resolution, then the next step is "final and binding" arbitration. The agreement provides for the procedures to be followed if arbitration is requested, and states that "[i]t is agreed that the arbitrator may not change, modify, alter, substitute, add to, or subtract from the provisions of this Agreement." The sole provision regarding termination in the agreement states that "[t]here shall be no discharge except for just and sufficient cause."

There is nothing in the collective bargaining agreement that limits the arbitrator to a choice between termination and reinstatement. The contract is virtually silent with respect to the arbitrator's power to fashion remedies. It states only that he "may not change, modify, alter, substitute, add to, or subtract from" the provisions of the agreement, and that if he awards back pay, he must offset the award by any collateral earnings of the employee.

Similarly, we find nothing in the questions submitted by the parties that limits the power of the arbitrator to fashion a remedy. If anything, the submission implies that a remedy other than termination or reinstatement was contemplated by the parties. The parties asked the arbitrator, first, whether there was just and sufficient cause to fire Minnie Pfeuffer, and "[i]f not, what shall be the remedy?"

In *County College of Morris, supra,* 100 *N.J.* 383, we held that the arbitrator exceeded his authority in ordering suspension rather than termination, concluding that he had no authority to read into the contract a requirement of progressive discipline. *Id.* at 397. In that case the arbitrator expressly found that there was just cause to terminate the employee, but concluded that the contract should be construed to require a less severe form of discipline because the employee had received no warning that his employment was in jeopardy. *Id.* at 392–93. Here, the arbitrator, having determined that the Bank lacked just and sufficient cause to fire its employee, was authorized to fashion an appropriate remedy.

It is argued that since reimbursement is not specifically provided for in the contract, the arbitrator was imposing a remedy that the agreement precludes. We decline to read the contract that strictly. Although the boundaries of the arbitrator's authority are defined by the collective bargaining contract, the agreement cannot be expected to provide specific remedies for every possible dispute. As the Supreme Court noted in *Warrior & Gulf, supra,* 363 *U.S.* at 579, 80 *S.Ct.* at 1351, 4 *L.Ed.*2d at 1416: "There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties." (quoting Cox, "Reflections Upon Labor Arbitration," 72 *Harv. L.Rev.* 1482, 1498–99 (1959)).

The arbitrator is not free to contradict the express language of the contract. But a rigid rule that an arbitrator's remedy must be expressly authorized by the bargaining agreement would subvert the purposes of arbitration. Arbitration is "a vehicle by which meaning and content are given to the collective bargaining agreement." *Id.* at 581, 80 *S.Ct.* at 1352, 4 *L.Ed.*2d at 1417. It is the arbitrator's role to fill the gaps and it is the arbitrator's construction that is bargained for in the collective bargaining process. *Enterprise Wheel, supra,* 363 *U.S.* at 599, 80 *S.Ct.* at 1362, 4 *L.Ed.*2d at 1429. We therefore reject the contention that when an arbitrator performs this "gap-filling" function, he is impermissibly adding to the terms of the agreement.

The arbitrator's award in this case is also consistent with his role as peace-keeper. As we noted earlier, arbitration is "[a] major factor in achieving industrial peace." *Warrior & Gulf, supra,* 363 *U.S.* at 578, 80 *S.Ct.* at 1350, 4 *L.Ed.*2d at 1415. It cannot be disputed that the arbitrator would have had the authority to suspend Pfeuffer for twenty-eight weeks without pay. However, in an attempt to reconcile the interests of the parties, the arbitrator chose to suspend Pfeuffer's pay for fourteen weeks and order her to reimburse the bank out of her back-pay award. Although the actual monetary difference

between these two remedies is minimal,[2] the symbolic difference is significant. The award recognizes the merits of each side's position and is apparently designed to strike a fair balance between the competing contentions of the employer and the Union. We see no basis for substituting our judgment for that of the arbitrator concerning how that balance can best be achieved.

To summarize, we agree with the courts below that the arbitrator acted properly and within his authority in finding the discharge to be improper. We therefore affirm the Appellate Division decision upholding the employee's reinstatement. Because we are of the view that the arbitrator's reimbursement remedy was also within his authority, we reverse the lower court's rejection of this remedy and reinstate that portion of the arbitrator's award ordering the employee to reimburse the Bank for its loss.

*For affirmance in part, reversal in part*—Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*Opposed*—None.

---

[2]At oral argument before the Chancery Division it was agreed that since Ms. Pfeuffer earned approximately $17,000 per year, $3500 represented slightly less than fourteen weeks' pay.