SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court. In the interest of brevity, portions of an opinion may not have been summarized.

**Borough of Carteret v. Firefighters Mutual Benevolent Association, Local 67**
**(A-10-20) (084709)**

**Argued March 1, 2021 -- Decided July 8, 2021**

**PIERRE-LOUIS, J., writing for a unanimous Court.**

In this case, the Court considers whether an arbitrator's interpretation of a labor agreement was "reasonably debatable" and should therefore have been upheld on appeal.

In 2011, the Borough of Carteret and the Firefighters Mutual Benevolent Association, Local 67 (FMBA) executed a collectively negotiated agreement (CNA) governing the terms and conditions of employment for the Borough's firefighters. As of 2013, the Borough employed four captains and generally staffed each shift with one captain, who was charged with managing subordinate firefighters also on duty. Under Article VIII, Section 5 of the CNA, if no captains were scheduled to work a particular shift, the senior firefighter on duty would assume the captain's responsibilities and be compensated at the captain's rate of pay.

Almost two years after the CNA went into effect, the Borough created a new position -- fire lieutenant -- falling between captain and firefighter in the chain of command. After the creation of the lieutenant position, if no captains were scheduled for a given shift, the lieutenant on duty would assume the captain's responsibilities. In those instances, however, the Borough paid lieutenants their regular salary, not the higher rate an acting captain would have been paid.

In 2017, the FMBA filed a grievance alleging that the Borough's failure to pay lieutenants at the rate of an acting captain when a lieutenant assumed a captain's responsibilities violated Section 5 of the CNA. At the arbitration hearing, Fire Chief Mark Hruska testified that the FMBA agreed to waive Section 5 if the Borough created the lieutenant position. In contrast, Jason Kurdyla, the FMBA President at the time of the hearing, testified that there was neither an agreement nor a vote by FMBA membership to modify Section 5. Kurdyla and another FMBA representative both testified that the duties previously performed by captains had been entirely assumed by lieutenants.

The arbitrator sided with the FMBA. The arbitrator did not credit Hruska's testimony and held that "the unrebutted testimony . . . that the lieutenants are performing

1

the duties of shift commanders" supports the conclusion that "intentional or not, what the Borough has done is to replace captains with lieutenants, at a lower pay rate" in violation of Section 5 of the CNA. The arbitrator therefore awarded back pay at the higher rate.

The Chancery Division upheld the award, but the Appellate Division reversed, finding that the difference between the Civil Service Commission's job descriptions for firefighters and fire lieutenants created uncertainty as to Section 5's application to lieutenants. The Court granted certification. ___ N.J. ___ (2020).

**HELD:** The arbitrator's award is supported by a reasonably debatable interpretation of the disputed provision, and therefore, the award should have been upheld on appeal.

1. An arbitrator's award resolving a public sector dispute will be accepted so long as it is "reasonably debatable." Under that standard, a court may not substitute its judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position. If two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable. (pp. 11-12)

2. The arbitrator's award in this matter was supported by a plausible interpretation of the CNA and therefore satisfies the "reasonably debatable" standard. In reversing the arbitrator's award, the Appellate Division incorrectly substituted its own judgment and did not afford proper deference to the arbitrator's interpretation of the CNA. The Borough interprets Section 5 as addressing only senior firefighters, inapplicable to lieutenants or any other Carteret Fire Department personnel. The FMBA views Section 5 as providing captain's pay to any non-captains of lower rank -- senior firefighters, lieutenants, or otherwise -- who assume the role of a captain when no captains are on duty. Both of those interpretations are arguably reasonable, but the arbitrator sided with the FMBA. The inquiry on appeal is not whether the appellate court has a better interpretation of the agreement. It is the arbitrator's interpretation of the CNA that the parties bargained for here. (pp. 13-15)

3. Of course, the CNA makes no reference to lieutenants because that position had yet to be created at the time the CNA was negotiated and went into effect. Notably, however, as Borough counsel conceded, the CNA applies to and governs lieutenants. In other words, although the CNA generally applies to lieutenants despite the fact that they are not mentioned at all in the agreement, it is only Section 5 that the Borough seeks to carve out as inapplicable to lieutenants. The arbitrator quite reasonably chose not to endorse that construction of the CNA. (pp. 15-16)

**REVERSED. The arbitral award is REINSTATED.**

**CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.**

2

SUPREME COURT OF NEW JERSEY
A-10 September Term 2020
084709

Borough of Carteret,
a municipal corporation of the
State of New Jersey,

Plaintiff-Respondent,

v.

Firefighters Mutual
Benevolent Association,
Local 67,

Defendant-Appellant.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
|--------|---------|
| March 1, 2021 | July 8, 2021 |

Raymond G. Heineman argued the cause for appellant
(Kroll Heineman Carton, attorneys; Raymond G.
Heineman, on the brief).

Ted Del Guercio, III, argued the cause for respondent
(McManimon Scotland Baumann, attorneys; Ted Del
Guercio, III, on the brief).

JUSTICE PIERRE-LOUIS delivered the opinion of the Court.

1

In this case, we are asked to determine whether an arbitrator's interpretation of a labor agreement was "reasonably debatable" and should therefore have been upheld on appeal.

The labor agreement at issue states, in part, that senior firefighters in the Carteret Fire Department are entitled to acting captain's pay whenever they assume the role of a fire captain. A dispute arose when the Borough of Carteret created the new position of lieutenant within the Fire Department, but did not pay lieutenants at the rate of an acting captain when they performed the duties of that role.

An arbitrator found that the Borough's failure to pay lieutenants at the rate of an acting captain when they assumed captain's responsibilities violated the labor agreement, and awarded back pay at the higher rate. The Appellate Division vacated the arbitrator's award because, in the court's view, the disputed provision of the labor agreement did not apply to lieutenants.

Although the Appellate Division's conclusion is arguably plausible in its own right, the court improperly substituted its own judgment for that of the arbitrator in vacating the arbitral award. We find that the arbitrator's award is supported by a reasonably debatable interpretation of the disputed provision, and therefore, the award should have been upheld on appeal. For the reasons

2

that follow, we reverse the Appellate Division's decision and reinstate the award.

## I.

## A.

In 2011, the Borough of Carteret and the Firefighters Mutual Benevolent Association, Local 67 (FMBA) executed a collectively negotiated agreement (CNA) governing the terms and conditions of employment for the Borough's firefighters. The CNA was to be in effect from January 1, 2011 through December 31, 2015. As a labor union, the FMBA is the "exclusive representative and bargaining agent" for "all fire personnel within the Carteret Fire Department," except the fire chief. The CNA provides for five categories of fire personnel employed by the Borough, in the following order of hierarchy: chief, fire prevention captain, fire official, captain, and firefighter.

Article VIII of the CNA sets forth a salary schedule. Central to this matter is Article VIII, Section 5, "Acting Captains." Section 5 states:

> There shall be a Captain assigned to each tour of duty, referred to as a Shift Captain. Whenever a Shift Captain is off, the senior firefighter on duty shall assume the responsibilities of Acting Captain and shall receive the rate of pay of a Captain for each day of such service, providing this does not conflict with Civil Service regulations.

3

The CNA states that Carteret Fire Department personnel are scheduled to work twenty-four hours at a time, with seventy-two hours off after each shift. As of 2013, the Borough employed four captains and generally staffed each shift with one captain, who was charged with managing subordinate firefighters also on duty. Under Section 5, if no captains were scheduled to work a particular shift, the senior firefighter on duty would assume the captain's responsibilities and be compensated at the captain's rate of pay.

In December 2012, almost two years after the CNA went into effect, the Borough passed an ordinance creating a new position within the Carteret Fire Department -- fire lieutenant -- a "first level supervisory position" falling between captain and firefighter in the Department's chain of command. The ordinance set the lieutenant salary at $95,050.46, which was $1,500 more than the highest firefighters' salary and approximately $8,000 less than the captain salary. The ordinance went into effect on January 1, 2013 and in July 2013, the Borough began promoting firefighters to the new lieutenant position from a preexisting list of firefighters who were potentially eligible for promotion to captain.

After the creation of the lieutenant position and the appointment of several firefighters to lieutenant, if no captains were scheduled for a given shift, the lieutenant on duty would assume the captain's responsibilities.

4

Notably, after the lieutenant position came into being, no firefighters were promoted to captain. And, by 2018, all the Fire Department's captains had retired or were demoted. The Borough, however, did not eliminate the position of "captain" within the Fire Department at that time.[1] As the number of captains dwindled from four to zero, all the shifts were supervised by lieutenants. In those instances, however, the Borough paid lieutenants their regular salary, not the higher rate an acting captain would have been paid pursuant to Article VIII, Section 5 of the CNA.

B.

On August 9, 2017, the FMBA filed a grievance with the Borough, alleging that the Borough's failure to pay lieutenants at the rate of an acting captain when a lieutenant assumed a captain's responsibilities violated Section 5 of the CNA.[2] The grievance alleged that the Section 5 violation occurred on August 7, 2017. At the FMBA's request, the grievance went to binding

---

[1] At oral argument, counsel for the FMBA represented that the Borough passed an ordinance in 2019 removing the position of "captain." Any elimination of that position, however, occurred after the arbitration that is the subject of this appeal and is therefore irrelevant to our review of this matter.

[2] Article IX of the CNA provides the procedure for filing a grievance. A grievance must be taken to the fire chief within seven days of its discovery, and, if not settled, brought before the Borough's Public Safety Committee. If the grievance is not resolved by the Committee, it goes to the Borough's Mayor and Council. If still not satisfactorily resolved, "the grievance shall be submitted to the Public Employment Relations Commission for arbitration."

arbitration. The New Jersey Public Employment Relations Commission designated an arbitrator to handle the matter.

An arbitration hearing was conducted in April 2018. Fire Chief Mark Hruska testified for the Borough. Before becoming the chief of the Fire Department, Hruska was a captain, and, in 2011, he began serving as president of the FMBA. In April 2013, Hruska was promoted to the role of acting fire chief -- a position not included in the FMBA's membership -- but he continued to serve as FMBA president until August 2013. Hruska testified that the FMBA agreed to waive Section 5, the acting captain's pay provision of the CNA, if the Borough created the lieutenant position. Hruska stated that the issue was discussed at FMBA meetings in 2012 and 2013 and voted on approvingly by FMBA members.

In contrast, Jason Kurdyla, the FMBA President at the time of the hearing, testified that there was neither an agreement nor a vote by FMBA membership to modify Section 5 of the CNA. Kurdyla and another FMBA representative both testified that the duties previously performed by captains had been entirely assumed by lieutenants.

In a written opinion, the arbitrator sided with the FMBA. The arbitrator did not credit Hruska's testimony regarding the alleged agreement between the Borough and the FMBA to waive the acting captain provision in exchange for

6

the creation of the lieutenant position. The arbitrator noted that Hruska could not identify any of the supposed negotiators on either side who came to that alleged agreement and that the FMBA's meeting minutes from 2012 to 2013 did not reflect a discussion or a vote on the issue by the FMBA membership. Additionally, the arbitrator found that "Hruska's dual role as both acting fire chief and president of [the FMBA] . . . quite literally embodied the concept of conflict of interest."

The arbitrator held that "the unrebutted testimony . . . that the lieutenants are performing the duties of shift commanders" supports the conclusion that "intentional or not, what the Borough has done is to replace captains with lieutenants, at a lower pay rate" in violation of Section 5 of the CNA. In so holding, the arbitrator rejected the Borough's argument that the parties established a past practice of not paying lieutenants in accordance with the CNA, finding instead that "[w]here the contract language conflicts with the parties' practice, [the FMBA] has a right to enforce its contract rights even if it has not done so before."

The arbitrator ordered the Borough to pay the acting captain's rate for every occasion on which a lieutenant had assumed the responsibilities of a captain since August 2017 when the grievance was first asserted. The total amount of backpay owed by the Borough was calculated to be $56,065.18.

7

C.

The FMBA petitioned to enforce the arbitration award and the Borough counterclaimed to vacate. The Chancery Division upheld the award, finding that the arbitrator neither "exceeded [nor] so imperfectly executed [her] powers that a mutual, final and definite award upon the subject matter submitted was not made." (quoting N.J.S.A. 2A:24-8(d)).

D.

The Borough appealed, arguing that "the arbitrator imperfectly executed her powers, misinterpreted [Section 5's] plain language, ignored, among other things, the parties' past practice, and improperly disregarded the Fire Chief's testimony." In an unpublished opinion, the Appellate Division reversed the Chancery Division and vacated the award. Observing that "[n]either the trial court nor this court may second-guess the arbitrator's interpretation of the CNA, so long as her construction is reasonably debatable," the Appellate Division nevertheless found that here, the Arbitrator "engrafted terms concerning lieutenants onto [Section 5], terms that are contrary to [Section 5's] plain language and were unintended by the parties when they negotiated the CNA."

The Appellate Division was persuaded by the Civil Service Commission's job descriptions for fire personnel. It noted that absent from the

8

job description for firefighters was any provision suggesting that a firefighter must assume captain's duties when a captain is not scheduled. Consequently, when a firefighter performs captain's duties, the firefighter is performing work beyond his or her job description. According to the court, that is why Section 5 provides for greater compensation in those instances. The Civil Service Commission's description of fire lieutenants, by contrast, expressly directs that a lieutenant "[act] in the place of a Fire Captain in his/her absence." The Appellate Division found nothing in the record to support the FMBA's argument that lieutenants should receive acting captain's pay "for performing work within their job description."

Finding that the difference between firefighters' and fire lieutenants' job descriptions created uncertainty as to Section 5's application to lieutenants, the Appellate Division concluded that the arbitrator should have given greater consideration to the parties' past practice; namely, that for four years, lieutenants in the Carteret Fire Department regularly assumed captains' responsibilities without demanding pay beyond that to which they were ordinarily entitled.

We granted the FMBA's petition for certification. ___ N.J. ___ (2020).

9

II.

A.

The FMBA argues that the Appellate Division "paid lip service" to the deferential standard of review applicable to arbitration awards, but ultimately reviewed the award de novo, improperly substituting its judgment for that of the arbitrator. The arbitrator's conclusion that lieutenants were entitled to acting captain's pay is, according to the FMBA, plausible and logical, and therefore must be upheld in the absence of language in the CNA expressly indicating a contrary intent.

B.

The Borough argues that the arbitrator improperly executed her powers by reading into the CNA a requirement that lieutenants be paid in accordance with Section 5. The Borough submits that the arbitrator's award disregarded the express language of the CNA and ignored the ongoing practice of the parties, which supported the Borough's practice of not paying acting captain's rates to lieutenants upon the creation of the latter position. The Borough asserts that "lieutenants are nowhere mentioned in [Section 5], as they were not contemplated at the time [the CNA] was drafted." Therefore, according to the Borough, paying the acting captain rate to lieutenants was never contemplated or negotiated, so the arbitrator interpreted the CNA incorrectly.

10

## III.

"Arbitration is a favored form of dispute resolution, whose usefulness for labor-management issues is well-recognized in this state." Borough of East Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013). To foster finality and "secure arbitration's speedy and inexpensive nature," reviewing courts must give arbitration awards "considerable deference." Ibid. (quoting Middletown Twp. PBA Local 124 v. Township of Middletown, 193 N.J. 1, 10 (2007)). "[A]rbitration is 'meant to be a substitute for and not a springboard for litigation.' Arbitration should spell litigation's conclusion, rather than its beginning." N.J. Tpk. Auth. v. Local 196, IFTPE, 190 N.J. 283, 292 (2007) (quoting Local No. 153, Off. & Pro. Emps. Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 449 (1987)).

The interpretation of a labor agreement "is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him [or her]" based solely on differences of interpretation. E. Rutherford PBA, 213 N.J. at 202 (quoting Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 433 (1996)). Accordingly, an arbitrator's award resolving a public sector dispute will be accepted so long as the award is "reasonably debatable." Id. at 201-02.

11

Under the reasonably debatable standard, a court "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's position." Ibid. (quoting Middletown Twp. PBA, 193 N.J. at 11). Put differently, if two or more interpretations of a labor agreement could be plausibly argued, the outcome is at least reasonably debatable. See id. at 206; PBA Local 11 v. City of Trenton, 205 N.J. 422, 430 (2011). "Thus, even if the remedy the Arbitrator fashioned was not the preferred or correct outcome, a reversal would be contrary to the deferential standard for reviewing arbitral decisions." E. Rutherford PBA, 213 N.J. at 206.

However, if an arbitrator adds "new terms to an agreement or ignore[s] its clear language," the award may be vacated as not reasonably debatable. PBA Local 11, 205 N.J. at 429. Additionally, the New Jersey Arbitration Act provides several statutory bases for vacating an arbitration award, such as when the award was procured through fraud, or the arbitrator was partial, corrupt, or guilty of misconduct. See N.J.S.A. 2A:24-8(a) to (c). The Act also states that an award should be vacated if an arbitrator "exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made." Id. at -8(d).

12

## IV.

Applying those standards, we are satisfied that the arbitrator's award in this matter was supported by a plausible interpretation of the CNA and therefore satisfies the "reasonably debatable" standard. In reversing the arbitrator's award, the Appellate Division incorrectly substituted its own judgment and did not afford proper deference to the arbitrator's interpretation of the CNA.

The Appellate Division, the Borough, and the FMBA all agree that the creation of the lieutenant position injected ambiguity into Section 5 of the CNA. Specifically, after the lieutenant position was created, a new job title was inserted between captain and firefighter. With Section 5 referring only to the positions of "captain" and "firefighter," it became unclear whether Section 5 of the CNA was triggered when no captains were on duty and a lieutenant, as the next position down on the chain of command, and therefore the "senior firefighter" on duty, assumed the responsibilities of a captain.

Pursuant to the Borough's interpretation, because Section 5 mentions only "senior firefighters," lieutenants are not entitled to the benefits of Section 5; namely, acting captain's pay. But since Section 5 could not have contemplated lieutenants filling in for captains because the CNA was executed before the creation of the lieutenant position, the FMBA argues the opposite:

13

that any lieutenant assuming a captain's responsibilities is entitled to acting captain's pay, just as a senior firefighter assuming the captain's role would be entitled to the higher payrate.

Stated differently, one interpretation views Section 5 as a contract provision addressing only senior firefighters, inapplicable to lieutenants or any other Carteret Fire Department personnel. The other views Section 5 as providing captain's pay to any non-captains of lower rank -- senior firefighters, lieutenants, or otherwise -- who assume the role of a captain when no captains are on duty.

Both of those interpretations are arguably reasonable, but the arbitrator sided with the FMBA, persuaded by the "unrebutted testimony that lieutenants are performing the duties of shift commanders." She found that the Borough, by not elevating any firefighters to the rank of captain while the captains all either retired or were demoted, had essentially replaced the fire captains with lieutenants at a lower rate of pay, in violation of Section 5 of the CNA. We find that to be a reasonably debatable interpretation of how Section 5 should apply to lieutenants who assume captain's responsibilities. A plausible reading of the CNA could lead to the conclusion that Section 5 embodied a negotiated agreement between the FMBA and the Borough that whenever an employee, lower in rank, of the Carteret Fire Department assumes the

14

responsibilities of a captain, the employee is entitled to acting captain's pay. That reasonable reading of the CNA undergirds the arbitrator's opinion and corresponding award.

The Appellate Division interpreted Section 5 differently, but the inquiry on appeal is not whether the appellate court has a better interpretation of the agreement. It is the arbitrator's interpretation of the CNA that the parties bargained for here. It may be that the Appellate Division disagrees with the arbitrator's determination, but an appellate court cannot substitute its own judgment for that of the arbitrator because the court believes its interpretation is the better one.[3]

The Appellate Division found that Section 5 is "devoid of any language concerning lieutenants" and that the arbitrator engrafted terms concerning lieutenants onto the CNA. The Borough makes the same argument at length. Of course, the CNA makes no reference to lieutenants because that position had yet to be created at the time the CNA was negotiated and went into effect. Notably, however, as Borough counsel conceded during oral argument, it is undisputed that the CNA as a whole applies to and governs lieutenants. In

---

[3] As previously noted, the Appellate Division relied heavily on the Civil Service Commission job descriptions in reversing the arbitrator's award. It is the CNA, however, that we are tasked with interpreting, not the Civil Service Commission job descriptions, which were not integrated into the CNA.

15

other words, although the CNA generally applies to lieutenants despite the fact that they are not mentioned at all in the agreement, it is only Section 5 that the Borough seeks to carve out as inapplicable to lieutenants.  The arbitrator quite reasonably chose not to endorse that construction of the CNA.

As our precedent indicates, affirming an arbitrator's award is not a comment on the viability of opposing interpretations of a disputed labor agreement, "[n]or is it a conclusion that the arbitrator's interpretation is the best one.  That is not the standard.  What is required is that the arbitrator's interpretation finds support in the Agreement . . . ."  PBA Local 11, 205 N.J. at 432.  Here, we find that it does.

V.

The judgment of the Appellate Division is reversed and the arbitrator's award is reinstated.


CHIEF JUSTICE RABNER and JUSTICES LaVECCHIA, ALBIN, PATTERSON, FERNANDEZ-VINA, and SOLOMON join in JUSTICE PIERRE-LOUIS's opinion.

16