**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1091-23

STATE OF NEW JERSEY,
GOVERNOR'S OFFICE OF
EMPLOYEE RELATIONS
(DEPARTMENT OF
CORRECTIONS, JUVENILE
JUSTICE COMMISSION, and
STATE PAROLE BOARD),

     Plaintiff-Respondent,

v.

POLICEMEN'S BENEVOLENT
ASSOCIATION, LOCAL 105,

     Defendant-Appellant.

_____

Argued November 19, 2024 – Decided January 16, 2025

Before Judges Gilson and Bishop-Thompson.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-1887-23.

Donald C. Barbati argued the cause for appellant (Crivelli, Barbati & DeRose, LLC, attorneys; Donald C. Barbati, on the brief).

Ryne A. Spengler, Deputy Attorney General, argued the cause for respondent (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Ryne A. Spengler, on the brief).

PER CURIAM

This appeal arises from a grievance between the State of New Jersey (State) and the Policemen's Benevolent Association 105 (PBA 105), which represents various police and corrections officers within the State. The dispute concerns the payment of the uniform allowance commingled with wages in a regular bi-weekly payday to eligible employees and not in a supplemental payday. PBA 105 appeals from a Law Division order granting the State's application to vacate the arbitration award and reasoning the award was procured by undue means and a mistake of fact. We hold the arbitration award was reasonably debatable based on the contract language and past practice. We, therefore, reverse, vacate the trial court's order, and reinstate the arbitration award.

I.

We derive the following facts from the record. PBA 105 is the sole and exclusive representative for police officers, and other related job titles employed by the State. The prior collective negotiations agreement (CNA) expired on June 30, 2019.

2                                                                          A-1091-23

The parties engaged in negotiations on a successor CNA. On April 20, 2021, the parties signed a memorandum of agreement (MOA) for a successor agreement that commenced on July 1, 2019, and terminated on June 30, 2023 (2019 CNA). Article XXXVIII – Uniform Allowance governs the allowance payment. That section provided that each affected employee entitled to the uniform allowance payment shall receive such payment in January and July of each calendar year. Regarding State Parole Board officers, that article stated:

> No allowance will be paid to employees who are not required to purchase a uniform and wear it for work. Accordingly, as of ratification of this Agreement, unit members working in Parole are not eligible for a uniform allowance. In the event Parole employees are required to wear uniforms for work during any portion of any year for the term of this Agreement, the State agrees to a uniform maintenance allowance for the affected employees as follows:
>
> \*\*\*
> - Should employees be required to wear a uniform anytime between January 1, 2022 and June 30, 2022, each employee shall receive $920.00 in July 2022. Only those employees with at least one (1) year of service as of June 30, 2022 shall be entitled to this payment;

In a separate paragraph, the article specified the uniform allowance for Department of Corrections (DOC) and Juvenile Justice Corrections officers:

> Employees who are required to wear or own a uniform for work and who are serving in the titles of

Correctional Police Officer Recruit, Senior Correctional Police Officer, Correctional Police Officer Recruit, Juvenile Justice, Senior Correctional Police Officer, Juvenile Justice, and Senior Interstate Escort Officer will be granted, in lieu of any uniform allowances other than the initial issues, the following payments:

\*\*\*

- $1,100.00 in July 2022 to those employees with at least one (1) year of service as of June 30, 2022[.]

The State paid the July 2022 uniform allowance on August 5, 2022 (Pay Period 16), in the officers bi-weekly payday rather than in the supplemental payday in July that was a longstanding sixteen-year past practice. Due to the uniform allowance's inclusion in the bi-weekly payday, additional state taxes were withheld compared to the taxes that would have been withheld if the allowance was paid as a supplement.

The State denied PBA 105's grievance, which proceeded to binding arbitration. The Public Employment Relations Commission appointed an arbitrator to hear and decide the disputed issue.

A grievance arbitration was held on February 24, 2023. The parties agreed that after hearing all the evidence and arguments, the arbitrator framed the issue

4

as — "Whether the State violated Article XXXVIII of the parties' [CNA] and past practice, and if so, what shall be the remedy?"

Both parties presented witnesses and documents at the arbitration. PBA 105 presented the testimony of Union President William Sullivan, then a seventeen-year DOC corrections police officer who had been "involved" in contract negotiations with the State since 2016. According to Sullivan for the past sixteen years, the State had issued uniform allowance payments on supplemental paydays rather than on regular, bi-weekly paydays. He further testified that based on research of his own payment history, the State made all but two uniform allowance payments on supplemental paydays each year.

In 2022, PBA 105 members received the July 2022 uniform allowance on Pay Period 16, a regular, bi-weekly payday, which was not agreed upon by the parties in the 2019 CNA. That payment was unlike the agreement reached with the State permitting payment on January 25, 2019, a regular, bi-weekly payday because the State was in the process of calculating retroactive pay for employees following the settlement of a successor CNA.

Richard Corcoran, CPA, employed with the accounting firm that prepares PBA 105's taxes, authored a report about the rate of state income tax withholding for PBA 105 members during Pay Period 16 and how that rate differed from the

A-1091-23

members withholding rate for the supplemental uniform payday made on January 28, 2022. Of the sampled twelve members, the withholding tax for the supplemental payday was 2.8% in contrast to the varied withhold tax that ranged from 3.48% to 5.72% for Pay Period 16. Corcoran opined PBA 105 members had on average overpaid their state income taxes $20.17, when payment was made during Pay Period 16.

The State presented the testimony of the Department of Treasury Central Payroll Supervising Analyst Zachary Burkhalter, who explained that regular payroll is used to pay regular wages, overtime, and other payments for a specific time period. On the other hand, supplemental payroll is a "catch-all" pay period — paid time missed on a regular pay date, or other "lump sum" payments like a one-time payment for vacation, sick, or compensatory time. According to Burkhalter, "there is no policy or procedure requiring uniform allowances to be paid by way of supplemental payroll."

Burkhalter testified that the earliest the uniform allowance could have been paid was August 5 because Centralized Payroll was implementing across the board salary increases for members of several unions and endeavored to ensure that members timely received their salary increases. Lastly, the tax

6

withholdings were based on the federal and state withholding table, and each individual employees W-4 form.

After considering the evidence and the parties' arguments, including post-hearing briefs, the arbitrator issued an opinion and award on July 6, 2023. The arbitrator concluded the State violated Article XXXVIII by making the July 2022 uniform allowance payment on August 5, 2022. The arbitrator found the State's contention that there was no violation since its payment of the uniform allowance on August 5, 2022 (Pay Period 16), which technically covered the pay period from July 16, 2022 through July 29, 2022), "creative." The arbitrator reasoned the State's argument failed because there is no language in the CNA that permitted the State to make payment after the month of July for a pay period falling within July. The arbitrator further reasoned the State's "suggested interpretation" would require the arbitrator "to disregard and rewrite the terms of the parties' [CNA]," which "New Jersey courts have made it clear that an arbitrator impermissibly exceeds their authority by doing so."

The arbitrator then considered whether the State violated a past practice by making the July 2022 uniform allowance payment on the regular, bi-weekly payday of August 5, 2022. The arbitrator noted the CNA was silent on whether uniform allowance payments must be made on a supplemental payday or on a

A-1091-23

regular payday. However, the arbitrator reasoned the "undisputed facts [were] sufficient to establish that payment of uniform allowances on supplemental paydays ha[d] been unequivocal, clearly enunciated and acted upon, and thus readily ascertainable over a reasonable period of time as the fixed and established practice accepted by both parties."

Finally, in addressing damages, the arbitrator rejected four arguments presented by the State. First, the arbitrator rejected the States argument raised for the first time in its written summation that PBA 105 members did not suffer any monetary loss "when federal tax withholdings are also considered." The arbitrator reasoned the tables based on documents admitted into evidence — the Corcoran report and the centralized payroll records — were not supported by testimony on the information presented in the table and the corresponding conclusion drawn from the tables. Moreover, PBA 105 was not provided with the opportunity to cross-examine any witness regarding monetary loss based on federal tax withholdings.

Second, the arbitrator rejected the State's argument that any overpayment of state taxes by PBA 105 members would be remedied via their 2022 tax returns because the argument "presupposed" that each member knew about the issue

A-1091-23

when the return was filed, knew the procedure to seek a refund, and sought a refund.

In rejecting the State's argument that a monetary award would not constitute a "penalty" prohibited by the CNA, the arbitrator explained that the PBA 105's request was not a "penalty" or a "form of punitive damages." Rather, PBA 105 sought "make-whole" compensatory relief, which is "the typical rule of thumb award[] [for] damages in arbitration cases." Thus, the arbitrator determined that "[a]ny monetary sums awarded will relate to the amount of damages suffered by [PBA 105] members due to the State's actions in this case."

Finally, the arbitrator found the State's argument that a monetary award would be contrary to law unpersuasive. The arbitrator noted the "State [did] not cite to any statute or court precedent prohibiting the award of reimbursement for excessive tax withholding."

After concluding the State violated the CNA and that PBA 105's requested remedies were reasonable, the arbitrator fashioned the following remedy: directing the State to "reimburse each affected member 'the difference between what they received as their uniform allowance payment on August 5, 2022, and what they should have received had the uniform allowance payment been issued as a stand-alone payment on a supplemental payday in accordance with

9

longstanding past practice'" and "the remedy of reimbursement shall not apply for any [PBA 105] member who has already received a refund for excess state tax withholding related to this matter."

The State filed a summary action under Rule 4:67-1(a) in the Law Division, seeking to vacate the award. The State argued that the arbitrator's remedy directed the State to issue tax refunds to PBA 105's members and thus violated the express provisions of the Tax Procedure Law and the Gross Income Tax Act, N.J.S.A. 54A:1-1 to 12-6. The State also argued the arbitrator violated the express provisions of the CNA and exceeded his authority by prescribing a remedy that is a penalty for the State's alleged violation. Finally, the State argued the arbitrator also made an "egregious mistake of fact" in concluding PBA 105 members suffered financial harm.

Following oral argument on December 6, 2023, the Law Division entered an order and statement of reasons granting the State's application and vacating the arbitration award. Relying on N.J.S.A. 2A:24-8 and relevant case law, the court found the arbitrator's "interpretation [of the CNA] and the conclusion [was] reasonabl[y] debatable." Notwithstanding that finding, the court vacated the award stating the arbitrator's remedy was procured by "undue means and a mistake of fact" because PBA 105 members "suffered no financial harm." The

court then stated: "There was sufficient evidence in the record to support the [a]rbitrator's conclusion that, in the short term, because [d]efendant's members were not reimbursed on the supplemental period, some had higher state taxes withheld." In considering federal tax withholding, the court stated: "Defendant's members had less total tax withheld." The court then reasoned "any of [d]efendant's members who had higher amount of state taxes withheld will ultimately receive a credit or refund against their year-end tax liability under New Jersey tax law." Thus, "any additional award would essentially act as a penalty against the State, exceeding the authority of the [a]rbitrator."

## II.

On this appeal, PBA 105 presents three arguments for our consideration. First, the trial court's vacation of the arbitration award was arbitrary, capricious, and unreasonable, warranting reversal. Second, the trial court mistakenly determined PBA 105 members suffered no financial harm. Lastly, the trial court erred in vacating the remedy, which the arbitrator fashioned within the parameters of his authority and the CNA.

Our review of a judge's decision to vacate a labor arbitration award is guided by certain well-established principles. The decision to vacate an arbitration award is a matter of law, and therefore, we review a trial judge's

11

decision de novo. See Yarborough v. State Operated Sch. Dist. of City of Newark, 455 N.J. Super. 136, 139 (App. Div. 2018) (citing Minkowitz v. Israeli, 433 N.J. Super. 111, 136 (App. Div. 2013)). "The public policy of this State favors arbitration as a means of settling disputes that otherwise would be litigated in a court." Badiali v. N.J. Mfrs. Ins. Group, 220 N.J. 544, 556 (2015) (citing Cnty. Coll. of Morris Staff Ass'n v. Cnty. Coll. of Morris Staff, 100 N.J. 383, 390 (1985)). To ensure the finality and the expeditious and inexpensive nature of binding arbitration, there is "a strong preference for judicial confirmation of arbitration awards," particularly in public-sector labor disputes. Borough of E. Rutherford v. E. Rutherford PBA Local 275, 213 N.J. 190, 201 (2013) (quoting Middletown Twp. PBA Local 124 v. Twp. of Middletown, 193 N.J. 1, 10 (2007)).

A court's review of an arbitration award is limited. Strickland v. Foulke Mgmt. Corp., 475 N.J. Super. 27, 38 (App. Div. 2023). Accordingly, we apply "an extremely deferential review when a party to a collective bargaining agreement has sought to vacate an arbitrator's award." Policemen's Benevolent Ass'n, Local No. 11 v. City of Trenton, 205 N.J. 422, 428 (2011).

In the public sector, "an arbitrator's award will be confirmed 'so long as the award is reasonably debatable.'" Id. at 429 (quoting Linden Bd. of Educ. v.

12

Linden Educ. Ass'n ex rel. Mizichko, 202 N.J. 268, 276 (2010)) (internal quotations omitted). An award is "reasonably debatable" if it is "justifiable" or "fully supportable in the record." Id. at 431 (quoting Kearny PBA Local No. 21 v. Town of Kearny, 81 N.J. 208, 223-24 (1979)). Pursuant to that standard, a court reviewing an arbitration decision "may not substitute its own judgment for that of the arbitrator, regardless of the court's view of the correctness of the arbitrator's [interpretation]." Borough of E. Rutherford, 213 N.J. at 201-02 (2013) (quoting Middletown Twp. PBA Local 124, 193 N.J. at 11 (internal quotations omitted).

N.J.S.A. 2A:24-8 sets forth the grounds for vacating an arbitration award. A court must vacate an arbitration award:

> a. Where the award was procured by corruption, fraud or undue means;
>
> b. Where there was either evident partiality or corruption in the arbitrators, or any thereof;
>
> c. Where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause being shown therefor, or in refusing to hear evidence, pertinent and material to the controversy, or of any other misbehaviors prejudicial to the rights of any party; [or]
>
> d. Where the arbitrators exceeded or so imperfectly executed their powers that a mutual, final and definite award upon the subject matter submitted was not made.

[N.J.S.A. 2A:24-8.]

"'[U]ndue means' ordinarily encompasses a situation in which the arbitrator has made an acknowledged mistake of fact or law or a mistake that is apparent on the face of the record." Sanjuan v. Sch. Distr. of W.N.Y., 256 N.J. 369, 382 n.1 (2024) (quoting Borough of E. Rutherford, 213 N.J. at 203). "Undue means has also been construed to include 'basing an award on a clearly mistaken view of fact or law.'" Id. (quoting Local Union 560, I.B.T. v. Eazor Express, Inc., 95 N.J. Super. 219, 227-28 (App. Div. 1967)).

Having reviewed the record, we conclude the arbitration award was a "reasonably debatable" interpretation of the CNA based on the evidence presented at the arbitration hearing. At arbitration, the issue framed was whether the State violated the uniform allowance provision of the CNA and past practice in paying the allowance in August 2022. The dispute between the parties pertained to contract interpretation and, more specifically, a sixteen-year long past practice of paying the uniform allowance in a supplemental payday.

The award shows the arbitrator thoroughly considered the parties' positions and the arguments raised. Relevant to this appeal, the arbitrator considered and rejected the State's arguments presented in its post-hearing brief, which was restated when the State moved to vacate the award, and renewed on

appeal: (1) the award is contrary to State tax law, (2) the award imposed a penalty against the State, and (3) PBA 105 members suffered no financial harm.

The arbitrator's award set forth detailed findings and reasons for sustaining PBA 105's grievance that the State violated the 2019 CNA and past practice. In finding the contract violation, the arbitrator properly considered the successor 2019 CNA.

While the CNA did not address a supplemental payday, the arbitrator properly considered extrinsic evidence such as Sullivan's unrebutted testimony of a sixteen-year past practice "to shed light on the mutual understanding of the parties" and past practice. Hall v. Bd. of Educ. of Twp. of Jefferson, Morris Cnty., 125 N.J. 299, 305 (1991). "The past practice of the contracting parties is entitled to 'great weight' in determining the meaning of ambiguous or doubtful contractual terms." Id. at 306 (citing Kennedy v. Westinghouse Elec. Corp., 16 N.J. 280, 294 (1954)). Simply put, the arbitrator adhered to a long-standing principle that "an arbitrator may 'weav[e] together' all those provisions that bear on the relevant question in coming to a final conclusion." Policemen's Benevolent Ass'n, 205 N.J. at 430 (alteration in original) (quoting N.J. Transit Bus Operations v. Amalgamated Transit Union, 187 N.J. 546, 555 (2006)).

We also discern no error in the arbitrator's ruling to reject the State's arguments regarding the post-hearing tables that were unsupported by testimony and case law. We similarly discern no error in the arbitrator's "make-whole" remedy that was consistent with his authority as vested by the CNA. Accordingly, we adhere to the well-established law that "so long as the contract, as a whole, supports the arbitrator's interpretation, the award will be upheld." Ibid. "If the correctness of the award, including its resolution of the public-policy question, is reasonably debatable, judicial intervention is unwarranted." Weiss v. Carpenter, Bennett & Morrissey, 143 N.J. 420, 443 (1996).

We reject the State's contentions that the arbitration award and decision was "procured by undue means and a mistake of fact, as [PBA's] members suffered no financial harm." We discern no mistake of fact, much less, undue means, to justify overturning the arbitration award. The testimony from Sullivan and Corcoran supports the arbitrator's findings of a contract and past practice violation. Accordingly, we hold the arbitrator made no mistake of fact that is apparent from the record. Having reviewed the record, we are satisfied the arbitration award was "consonant with the matter submitted." Grover v. Universal Underwriters Ins. Co., 80 N.J. 221, 231 (1979).

Nor does undue means apply to the award that limits the remedy to those PBA 105 members who had not filed for a refund. We are satisfied the award comports with Article XI (H), Step Three, ¶ 2, of the parties' Agreement, which confined the arbitrator to the "the precise issue submitted for arbitration" and clearly provides the remedy was not a penalty. Given those guardrails, the arbitrator correctly limited the remedy by affirmatively excluding any PBA 105 member who has already received a refund for excess state tax withholding related to this matter. See N.J.S.A. 2A:24-8; Local No. 153, Off. of Pro. Emps. Int'l Union v. Tr. Co. of N.J., 105 N.J. 442, 449 (1987). Thus, the onus is on individual PBA members to prove whether a refund for excess state tax withholding was received.

We also add that the State did not identify any public policy that the arbitration award violates. See Middletown, 193 N.J. at 11.

In sum, we conclude the arbitration award is reasonably debatable and did not violate existing law or public policy. We reverse, vacate the trial court's order, and reinstate the remedy the award imposed.

Reversed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1091-23